1
2
3
4
5
6
7  **IN THE UNITED STATES DISTRICT COURT**
8  **FOR THE EASTERN DISTRICT OF CALIFORNIA**
9
10 ROSALVA GARZA,                                    CASE NO. CV-F-04-6441 OWW LJO
11          Plaintiff,                              **FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER**
12      vs.                                         **ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 14)
13   _____
14 JO ANNE BARNART,
   Commissioner of Social Security,
15
            Defendant.
16 _____/

   Plaintiff Rosavla Garza ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits and Supplemental Security benefits under the Social Security Act, Titles II and XVI ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

   Claimant filed her complaint on October 25, 2004 and her opening brief on June 27, 2005. The Commissioner filed her opposition to the appeal on July 29, 2005. Claimant filed a reply brief on August 29, 2005.

                              **BACKGROUND**
                         **Administrative Proceedings**

   Claimant filed applications for Disability Insurance Benefits and for Supplemental Security Income under the Social Security Act on July 17, 2002. (Administrative Record "AR" 57-59, 211-213.) She alleges a disability onset of May 23, 2002 due to left knee and ankle pain, right upper arm pain and

neck pain. (AR 57, 73.) Claimant's application for benefits was denied and denied upon reconsideration. (AR 37-40, 42-46.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on December 3, 2003. (AR 24-34.) The Appeals Council denied review on August 25, 2004. (AR 5-8.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Background and Work Experience

Claimant was born on March 1, 1955. (AR 259.) She completed the ninth grade with no further education. (AR 259.)

### Medical History

The pertinent medical history is summarized as follows.

Claimant's treating physician was orthopedic surgeon Robert E. Caton, M.D. On January 18, 2001, claimant saw Dr. Caton for left knee pain. On physical examination, claimant had full range of motion of the knee, full extension and full flexion, but tenderness at the medial joint line. (AR 187.) Dr. Caton placed claimant on Celebrex, for conservative treatment. (AR 186.) Claimant started a new job working in a freezer environment, and he felt that claimant should not work in a cold freezer. (AR 186.)

Claimant saw Dr. Canton on March 14, 2002, and he had not seen her for a year. (AR 189.) Claimant reported that she was working, but that her knee was becoming worse. (AR 189.) She reported the knee buckling and an abnormal gait. (AR 189.) The knee showed tenderness along the medial joint line, some palpable crepitus and mild effusion. (AR 189.) Dr. Caton ordered an MRI. (AR 189.) The MRI on April 27, 2002 of the left knee gave the impression of a possible tiny tear involving the posterior horn of the medial meniscus, which could have been the result of the prior surgery. (AR 185.) An X-ray of claimant's right elbow on April 9, 2002 as a result of claimant's pain complaints showed a negative right elbow. (AR 112.) An X ray of claimant cervical spine on April 9, 2002 show mild cervical spondylosis. (AR 113.)

On May 2, 2002, Dr. Caton reported claimant's continued problems with her knee and suggested that claimant would require surgery. (AR191.)

On June 7, 2002, claimant was seen for physical therapy initial evaluation. (AR 108-110.) The long term goal was limited to 2 visits to establish claimant in a home exercise program and increase

mobility in the neck and right shoulder. (AR 108-109.)  Physical therapy on July 15, 2002 continued the goals. (AR 105-106.)

On June 14, 2002, claimant underwent surgery for a tear of the posterior horn medial meniscus. (AR 182.) The prognosis was for further surgery in the future and possible knee replacement. (AR 182.)

On June 18, 2002, claimant reported doing well following surgery. (AR 193.) On June 25, 2002, Dr. Caton reported that claimant's sutures were removed and she was scheduled for physical therapy. (AR 194.) On August 5, 2002, Dr. Caton reported that claimant was in physical therapy for a month, which would be renewed. (AR 195.) He gave her disability for six weeks. (AR 195.)

On September 5, 2002, claimant returned to Dr. Caton. (AR 196-197.) Dr. Caton reported that claimant needed occasional medications, including pain pills, anti-inflammatories and occasional physical therapy and/or injections. (AR 196.) Dr. Caton noted that claimant is a qualified candidate for job rehabilitation for a less demanding job, but that she could not climb ladders. (AR 196.) Dr. Caton reported that claimant believed she should not have to work again, but he explained that "she is eligible for a semi-sedentary type job." (AR 196.)

On October 17, 2002, Dr. Caton reported that claimant's condition was permanent and stationary. (AR 199.) Dr. Caton reported that claimant was eligible for a semi-sedentary job where she walks less than 2 hours a day. (AR 199.) He further restricted her to no climbing of ladders, no repetitive motion of the knee and no lifting greater than 25 pounds. He gave her disability for six more weeks. (AR 198.)

On December 16, 2002, Dr. Caton reported that claimant felt she could not do any type of job activity. (AR 200.) Dr. Caton, however, informed her that she could do less demanding work. He noted there was nothing other than long term conservative treatment that could be done. (AR 200.)

On January 30, 2003, claimant reported again subjective complaints of pain and that the knee was buckling. (AR 202.) On examination, Dr. Caton found significant crepitus, moderate effusion and tender to patella compression and motion. (AR 202.) Dr. Caton ordered another MRI. The MRI of the left knee on April 3, 2003 showed the absence of the posterior horn of the medial meniscus which is the location where claimant had a tear, minimal joint effusion and normal remainder of the knee. (AR 184.)

On March 11, 2003, state agency physician, David Pong M.D. completed the Residual Functional Capacity Assessment form. (AR 160-167.) Dr. Pong found claimant able to lift 20 pounds occasionally,

1  and 10 pounds frequently and stand/walk at least 2 hours in an 8 hour workday and sit 6 hours in an 8-
2  hour workday. (AR 161.)  He limited claimant's ability to push or pull in the lower extremities and only
3  occasionally climb, balance, stoop, kneel, crouch or crawl and to never climb scaffolds or ladders. (AR
4  162.)

5  On April 10, 2003, Dr. Caton reported claimant's continued complaint of pain.  Dr. Caton gave
6  her an injection of Marcaine and Depo-Medrol. (AR 205.)  On May 22, 2003, the same complaints and
7  findings were made.  Dr. Caton gave her Vicodin and Vioxx. (AR 206.)  On July 10, 2003, Dr. Caton
8  reported that if the knee did not improve, claimant's knee would require further shaving a debridement
9  of the knee joint with removal of loose debris. (AR 209.)

10  On April 22, 2004, Dr. Caton reported that claimant's knee had undergone five Hyalgan
11  injections and she continues to complaint of pain. (AR 220.)  He stated that claimant warrants only long
12  term conservative care and still recommended work of a semi-sedentary type with no walking more than
13  2 hours a day and no climbing ladders. (AR 220.)

14  A nerve conduction study was performed on April 8, 2004 on claimant's complaints of bilateral
15  hand numbness and tingling. (AR 234.)  The nerve conduction study was normal. (AR 235.)  An MRI
16  of the right shoulder on March 6, 2004 showed a normal right shoulder. (AR 237.)

17  On December 3, 2004, Patrick Bianchi, M.D., another state agency physician, opined that
18  claimant could lift 20 pounds occasionally, ten pounds frequently, stand and/or walk for at least two
19  hours in an 8-hour work day, using a knee brace for ambulation and sit for 6 hours in an eight hour
20  workday. (AR 131.)  Dr. Bianchi further limited claimant's pushing and pulling to occasional with the
21  lower extremity due to knee pain and with upper extremities due to arm pain. (AR 131.)  He further
22  noted that claimant should only occasionally climb, balance, stoop, kneel, crouch or crawl. (AR 132.)

**Hearing Testimony**

24  Claimant testified that she has pain in her left knee and it travels up and pain in her right
25  shoulder. (AR 260.)  Her hands are weak.  She last worked as a sitter for an elderly woman. (AR 261-
26  262.)  She testified that she cannot do any of her prior work because standing swells her ankle. (AR 266.)
27  It also hurts her back. (AR 267.)  She lives with her 17 and 20 year old daughters. (AR 270.)  She
28  makes meals 3-4 times a week and washes dishes about the same. (AR 270.)  She does not do other

4

house hold chores. She does her own laundry and the girls do their own. (AR 271.) She visits with her mother every day. She sits outside but does not do any other activity. (AR 273.) She was told by her doctor to rest and use a heating pad. (AR 276.) She testified she can stand for 10-15 minutes and sit no more than 30 minutes and walk half a block. (AR 277.) She cannot reach with her right arm or reach overhead. (AR 278-79.) She described her pain as constant and mild. (AR 282.) The pain recedes if she elevates her leg. She does stretching for physical therapy. (AR 283.) Her left knee has given out and she has fallen. (AR 284.) She wears a knee brace. (AR 284.)

Vocational Expert ("VE"), Susan Miranda, testified. The VE testified that claimant's past relevant work varied, depending on the job, from light to medium exertion and unskilled. (AR 286.) The ALJ gave the hypothetical of ability to lift, push, pull 20 pounds occasionally and 10 pounds frequently and walk, stand frequently and sit occasionally. The VE testified that claimant could perform her past relevant work as an attendant, and she could also perform the job as a cafeteria attendant, small parts assembler, hotel housekeeping, and as a cashier. (AR 287-288.) In the second hypothetical, the ALJ gave limitations in overhead reach in the right dominant side and slightly limited in ability to do simple routine tasks. (AR 288.) The VE testified that claimant could perform her past relevant work as an agriculture sorter and as an attendant, with a 30 percent erosion of the occupational base. (AR 288-289.) With moderate limitations in overhead reach and slight limitations in gross manipulation, the VE testified that she could perform the work as an attendant, with a 70% erosion. (AR 289.) When asked to assume a sedentary residual functional capacity, the VE testified that claimant could perform a cashier position, small parts assembler, charge account clerk and as a lens swap grader. (AR 290.) With limitations in overhead reach and gross manipulation, the VE testified that there would be 50 percent erosion to a 90 percent erosion. (AR 291.)

### **ALJ Findings**

In his December 3, 2003 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 24.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 32-33):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security act and is

|   |   |   |
|---|---|---|
| 1 |    | insured for benefits through the date of this decision. |
| 2 | 2. | The claimant has not engaged in substantial gainful activity since the alleged onset of disability. |
| 4 | 3. | The claimant's degenerative joint disease of the left knee is a severe impairment, based upon the requirements in the Regulations. 20 CFR §§404.1521 and 416.921. |
| 6 | 4. | This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. |
| 8 | 5. | The ALJ finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision. |
| 10 | 6. | The ALJ has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment. 20 CFR §§404.1527 and 416.927. |
| 12 | 7. | The claimant has the following residual functional capacity: occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight hour workday, sit about six hours in an eight hour workday, pushing and pulling limited in the left lower extremity to occasional. She can climb, balance, stoop, kneel, crouch and crawls only occasionally. She has no manipulative, visual, communication or environmental limitations. |
| 18 | 8. | The claimant in unable to perform any of her past relevant work. 20 CFR §§404.1565 and 416.965. |
| 20 | 9. | The claimant is a "younger individual." 20 CFR §§404.1563 and 416.963. |
| 21 | 10. | The claimant has "a limited education." 20 CFR §§404.1564 and 416.964. |
| 22 | 11. | The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. 20 CFR §§404.1568 and 416.968. |
| 24 | 12. | The claimant has the residual functional capacity to perform a significant range of sedentary work. 20 CFR §416.967. |
| 26 | 13. | Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.18 as a framework for decision-making, there are a significant number of jobs in the national economy that she could |

perform. Examples of such jobs include work as a cashier, an assembly worker, a charge clerk or a lens blocker. There is fifty percent erosion due to the claimant's nonexertional limitations but that still leaves adequate jobs in the regional economy.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §§404.1520(f) and 416.920(f).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) there is not substantial evidence that claimant can perform work, (2) unfairly reviewed the testimony, (3) failed to inform claimant of her right to be represented, and (4) did not develop the record.

/////

**The ALJ's Finding of Residual Functional Capacity**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

The ALJ found claimant has the following residual functional capacity: occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight hour workday, sit about six hours in an eight hour workday, pushing and pulling limited in the left lower extremity to occasional. She can climb, balance, stoop, kneel, crouch and crawls only occasionally. She has no manipulative, visual, communication or environmental limitations.

Claimant argues that substantial evidence does not support the ALJ's residual functional capacity because the ALJ only considered unfavorable evidence.

The Court does not find that the ALJ only considered evidence unfavorable to claimant. The ALJ summarized all of the evidence in the record and noted at multiple times, claimant claims of subjective knee pain. (AR 27-29.) The ALJ accurately noted the pain and treatment provided to claimant throughout the ALJ's decision. For instance, the ALJ noted the "significant and worsening subjective complaints" by claimant to Dr. Caton and the she reported "the knee had been giving way and buckling." (AR 29.) The ALJ accurately summarized Dr. Caton's treatment notes, describing both favorable and unfavorable evidence.

Indeed, Dr. Caton's treatment notes provide substantial evidence to support the ALJ's findings. The ALJ gave controlling weight to Dr. Caton's medical observations and conclusions. (AR 30.) The ALJ found Dr. Caton's medical conclusions "are fully supported by the objective evidence and by the reports of the other examining physicians and because these conclusions are within his area of expertise." (AR 30.) Dr. Caton's treatment notes, including his clinical testing, are replete with his opinion that claimant could perform a semi-sedentary job, that required less than two hours of walking a day, did not involve climbing ladders or lifting more than 25 pounds and did not require repetitive motion about the knee. (See e.g., AR 198.)

Dr. Pong, a state agency physician, opined consistent with the opinion of Dr. Caton. Dr. Pong opined that claimant is able to occasionally lift 20 pounds frequently, lift 10 pounds, and stand/walk for at least 2 hours in an 8-hour workday, and sit for six hours. (AR 30, 161.)

The ALJ noted that a different medical consultant reviewed Dr. Pong's report and noted a discrepancy. The ALJ addressed the discrepancy:

> Dr. Edward Wilson, a consulting examiner for the Social Security administration, reviewed Dr. Pong's report and agreed with the exertional, postural and manipulative limitations assessed. [AR 171.] Dr. Wilson opined that a discrepancy existed between the DDS determination that the claimant could stand and/or walk for at least two hours and the opinion of the claimant's treating physician. In reviewing the treating physician's records, the [ALJ] notes that he stated that the claimant could handle a job that required less than 2 hours of walking per day. The sedentary RFC assessed, however, presumes no more than two hours of standing and/or walking in an eight hour day. There is no indication in the medical record that the claimant is unable to perform a combination of standing and walking for at least two hours per day." (AR 30.)

The ALJ reasonably evaluated the medical opinions and concluded that Dr. Pong's assessment was supported by Dr. Caton's opinion. It is for the Commissioner to resolve conflicting evidence. *Sanchez v. Secretary of HHS*, 812 F.2d 509, 511 (9th Cir. 1987)

Claimant also argues that the ALJ failed to include the additional limitations assessed by the state agency physician, Dr. Bianchi, of the need to use a knee brace and to decrease pushing and pulling in the upper extremities. (Opening Brief p.8.)

The ALJ assigned less weight to Dr. Bianchi's opinion because "although it seems to appropriately assess the claimant's degenerative joint disease of the right knee, it assesses limitations

1  based on the claimant's subjective complaints of neck and arm pain that do not have any objective basis
2  in the medical record." (AR 29.) Indeed, there was no objective evidence in the record of neck and arm
3  pain. For instance, the MRI of her arm showed normal findings. (AR 237.) Therefore, the ALJ did not
4  err in excluding the limitations assessed by Dr. Bianchi.

5  Claimant also argues Dr. Caton placed a 10-pound lifting limitation on claimant (Opening brief
6  p.8), which the ALJ failed to address. The Commissioner accurately notes that there is no support for
7  this limitation in the record. Dr. Caton restricted claimant to lifting no more than 25 pounds. (AR 198.)

8  It is clear from these findings that the ALJ analyzed the records and medical opinions. *Benton*
9  *ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains
10  conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict).

11  Claimant finally argues that the ALJ did not consider her obesity.

12  An ALJ must consider obesity in determinations of disability. *Hammock v. Bowen*, 879 F.2d
13  498, 503-504 (9th Cir.1989) (en banc). See also Social Security Ruling 02-01P (discussing the
14  evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p). SSR 02-01P
15  states, that as the initial step in the sequential evaluation process, "when establishing the existence of
16  obesity, we will generally rely on the judgment of a physician who has examined the claimant and
17  reported his or her appearance and build." (SSR 02-01P, para. 4.)

18  While the SSR states that the Social Security Administration will evaluate effects of obesity, it
19  remains claimant's burden to show that obesity has some effect on his functional capacity. *Burch v.*
20  *Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of
21  a claimant's impairments or compare them to any listing in an equivalency determination, unless the
22  claimant presents evidence in an effort to establish equivalence.) Claimant must come forward with
23  some evidence of how his obesity limits her functioning. *Burch v. Barnhart*, 400 F.3d at 683 ("Even
24  on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would
25  have impacted the ALJ's analysis.")

26  There was no evidence before the ALJ, and none in the record, which states that claimant's
27  obesity limits his functioning. Neither treatment notes nor any diagnoses addressed claimant's
28  limitations due to obesity. See Social Security Ruling 02-01P ("[W]e will not make assumptions about

the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.") The Court declines to speculate, as claimant suggests, that obesity exacerbated her knee impairment. (Opening Brief p.3 "[Obesity] combines with the knee pathology to disable plaintiff more than the ALJ found.")

### ALJ's Review the Testimony

Claimant also argues that "[h]er testimony was ignored in the decision for the most part. Much of it was misstated." (Opening brief, p.4:2-4.)

Claimant's brief fails to develop these points and the Court will not speculate on them. When an ALJ has made specific findings to justify a decision to disbelieve subjective complaints and the findings are supported by substantial evidence, a court may not second guess the decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

The ALJ noted the scope of claimant's activities of daily living:

> "She testified that she prepares meals and washes dishes three or four times a week. She does laundry once or twice a week and shops twice a week. She makes her bed once a week and changes her sheets twice a month. She watches television, reads and listens to the radio every day. She leaves the house at least five times a week, either to shop or visit with others. She often sits outside and is able to water the lawn." (AR 26.)

*See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs,

prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.) The ALJ also relied upon his observations at the hearing:

> "The undersigned observed that, at the hearing, the claimant had no difficulty reaching to the front and the side. She had a slight problem reaching overhead with her right arm and turning her head. She had no difficulties grasping, fingering, feeling or writing." (AR 27.)

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (An ALJ may not rely solely on his own observations of claimant at the hearing as the only reason for rejecting claimant's complaints.) Regardless, "[t]he inclusion of the ALJ's personal observations does not render the decision improper." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ also relied upon claimant's own reports of her pain. The ALJ considered claimant's written reports (AR 26, 96-101), and her testimony, stating, "She characterized her pain as mild in degree but burning and continuous." (AR 27.)

The ALJ noted also that claimant's subjective testimony was not consistent with the Record:

> "The claimant's statements concerning her impairments and their continued impact on her ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners."

Therefore, contrary to plaintiff's claims, the ALJ comprehensively and correctly evaluated claimant's pain complaints and determined that claimant had an exertional capacity for sedentary work. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. The ALJ's credibility assessment is entitled to "great weight." *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.1985). Thus, there is substantial evidence in the record to support the ALJ's rejection of claimant's subjective complaints.

### Duty to Develop the Record

Claimant argues that the ALJ erred in failing to recontact Dr. Caton to obtain his new February 4, 2004 opinion.

Although the claimant bears the burden of proof where the evidence in the record is equivocal, the ALJ has a duty to assist in developing the record. *Armstrong v. Commissioner of Social Security*,

12

160 F.3d 587, 589-90 (9th Cir.1998); see also *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2084 (2000); 20 C.F.R. § 404.1512(a) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence"); *id.* §§ 416.912(d)-(f) (detailing the ALJ's duties to develop a claimant's complete medical history before making a determination of non-disability; to obtain additional information if reports from claimant's medical sources contain ambiguities or are otherwise "inadequate for us to determine whether you are disabled;" and to order a consultative examination if unable to seek clarification from medical sources or if "the information we need is not readily available from the records of your medical treatment source"). If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 416.912(e).

Claimant argues that the ALJ should have obtained updated treatment notes from Dr. Caton and also his February 4, 2004 opinion on a fill in the blank form. (Opening Bief, Appendix 1.) Claimant argues that Dr. Caton's February 4, 2004 opinion is "new and material evidence."

The court has jurisdiction to remand matters on appeal for consideration of newly discovered evidence. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985); 42 U.S.C. § 405(g). Section 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to incorporate the evidence in a prior proceeding. *See Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir.1984). To meet the materiality requirement, the new evidence must bear directly and substantially on the matter. *Id.* If new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied. *See Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir.1984). At a minimum, such evidence must be probative of mental or physical impairment. *Hall v. Secretary of Health and Human Services*, 602 F.2d 1372, 1377 (9th Cir.1979). Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir.1984).

Here, claimant requested review from the Appeals Council of the ALJ's decision. (AR 14.)

1  Claimant submitted additional treatment records from Dr. Caton dated October 2, 2003 through April
2  22, 2004 to the Appeals Council. (AR 8.)  Claimant did not submit Dr. Caton's February 4, 2004
3  opinion to the Appeals Council for review. Claimant does not explain why the February 4, 2004 opinion
4  on a fill in the blank form was not submitted with the treatment notes. The Appeals Council issued its
5  final decision on claimant's request for review in August 2004. (AR 5-8.) Thus, the Appeals Council
6  could have considered Dr. Caton's February 4, 2004 opinion had claimant submitted it to the Council.
7  Therefore, claimant has not shown good cause for failure to submit Dr. Canton's February 4, 2004
8  opinion to the Appeals Council.[1]

### Representation by Counsel

10  Claimant argues that the ALJ did not adequately explain her right to an attorney.

11  When a claimant appears at a hearing without counsel, the ALJ must "scrupulously and
12  conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially
13  diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Key v.*
14  *Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). "Lack of counsel does not affect the validity of the hearing
15  unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings." *Id.*

16  In the previous section, the Court found that the ALJ did not error in developing the record.
17  Claimant has not demonstrated prejudice or unfairness in the administrative proceeding from lack of
18  representation. Accordingly, the Court does not find error.

19  /////
20  /////
21  /////
22  /////
23  /////
24  /////
25  /////
26  /////

---

[1] Dr. Caton continued to express his opinion that claimant could perform less demanding, sedentary work and she should continue with conservative care.

**CONCLUSION**

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Rosalva Garza.

These findings and recommendations are submitted to United States District Judge Oliver W. Wanger pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304. Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 20, 2005**          /s/ Lawrence J. O'Neill
b9ed48                                                    UNITED STATES MAGISTRATE JUDGE